IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAMELA JEAN HILL,         : Civil No. 1:24-CV-004
                              :
    Plaintiff,           :
                              :
      v.               :
                              : (Chief Magistrate Judge Bloom)
MARTIN J. O'MALLEY,     :
Commissioner of Social Security,  :
                              :
    Defendant.       :

## MEMORANDUM OPINION

## I. Introduction

Pamela Hill filed an application for disability and disability insurance benefits, as well as supplemental security income, on November 16, 2020. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Hill was not disabled from her alleged onset date of December 1, 2018, through the date of the ALJ's decision, December 23, 2022.

Hill now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.    Statement of Facts and of the Case

Pamela Hill filed for disability and disability insurance benefits, as well as supplemental security income, alleging disability due to major depressive disorder, anxiety, and postpartum depression. (Tr. 65). She alleged an onset date of disability of December 1, 2018. (*Id.*). Hill was 32 years old at the time of her alleged onset of disability, had at least a high school education, and had past relevant work as a hair stylist and a waitress. (Tr. 30).

The medical record regarding Hill's impairments revealed that in June of 2018, prior to the alleged onset date, Hill began treating with REACH Medical for Buprenorphine treatments. (Tr. 377). Hill was 20 weeks pregnant and had a history of methamphetamine and heroin use. (*Id.*). A mental status examination at this time revealed a normal mood and affect, and normal recent and remote memory. (Tr. 380). Hill

expressed a willingness to get her life under control because she was pregnant. (Tr. 381). Treatment notes from REACH in September of 2018 noted Hill's history of anxiety and depression, but that her mood was stable. (Tr. 384). Hill continued to receive Buprenorphine treatment while pregnant and after having her baby. (Tr. 387-448).

Treatment notes from Dr. Alexander Langley, M.D., in April of 2019 noted Hill's continued struggle with depression and anxiety. (Tr. 657). At this time, she reported that her son's father was in jail, and she was unable to keep herself together enough to hold a job. (*Id.*). On examination, her mood was depressed and anxious, and her judgment and insight were intact. (Tr. 658). In May, Hill reported increased sedation after Dr. Langley changed her medications, although Dr. Langley noted some improvement in her depression. (Tr. 663). Treatment notes from July indicated that Hill reported no depression and improved anxiety. (Tr. 669). On examination, her mood was "much improved" and her judgment and insight were intact. (*Id.*). Dr. Langley continued Hill on her current medications. (Tr. 670). In August, Hill reported to REACH that she was experiencing increased anxiety, although her examination

revealed a normal mood and affect, and normal recent and remote memory. (Tr. 411-12). However, in October and November, Hill reported worsening depression and increased anxiety to Dr. Langley. (Tr. 678-79, 685). In January of 2020, after making some medication changes and getting Hill back on her regimen, Dr. Langley noted a much-improved mood, congruent affect, and intact insight and judgment, and further opined that "this is the best I have ever seen the patient doing." (Tr. 692-93). Dr. Langley continued Hill on her current medications. (*Id.*).

Hill began treating with Cayuga County Community Mental Health Center in June of 2020 for her depression. (Tr. 523). Treatment notes indicated that Hill had been treating with Dr. Langley but that her medications were making her feel numb and tired. (*Id.*). Hill reported varying moods, irritability, and symptoms of anxiety, worry, and nervousness. (*Id.*). A mental status examination revealed a euthymic mood, intact memory, cooperative attitude, intact concentration and attention, and good judgment. (Tr. 525). She was diagnosed with major depressive disorder, and it was recommended that she could benefit from therapy. (Tr. 526).

Hill began treating with Nurse Practitioner Stephanie Bizzari in July of 2020. (Tr. 527). NP Bizzari noted Hill's complaints of feeling tired, having low motivation and energy, and Hill's reports of improved anxiety. (*Id.*). On examination, Hill exhibited a depressed mood, intact memory, intact attention and concentration, and fair insight and judgment. (Tr. 528-29). In September, Hill reported ongoing depression with fair motivation and energy, but that she continued to feel dull. (Tr. 453). However, an examination revealed a cheerful mood, good eye contact, intact memory, intact attention and concentration, and fair insight and judgment. (Tr. 454).

NP Bizzari made some changes to Hill's medications, and in October, Hill reported improvement in that she was happier, less anxious, had improved motivation and energy, and was "dealing with the baby better." (Tr. 456). On examination, Hill had a euthymic mood, cooperative attitude, intact attention and concentration, and intact memory. (Tr. 457). In November, Hill reported her depression had improved (Tr. 536), and in December, NP Bizarri characterized Hill's depression as stable and controlled. (Tr. 539).

Treatment notes from Dr. Langley in January of 2021 indicate that Hill's medications were working for her, but that she reported not being ready to go back to work. (Tr. 705). Dr. Langley noted Hill's intact insight and judgment, and that she exhibited no depression, anxiety, or agitation. (Tr. 706). NP Bizzari noted in February of 2021 that Hill reported her mood as stable, and that she had missed appointments because she was traveling. (Tr. 542). Hill further reported minimal depression, and that she had not experienced irritability or agitation. (*Id.*). A mental status examination revealed a depressed mood, cooperative attitude, ability to maintain focus, and good judgment. (Tr. 543). Around this time, Hill was continuing treatment at REACH and reported no other issues other than needing a refill of her Buprenorphine. (Tr. 504, 506). However, in May, Hill reported increased anxiety after stopping Wellbutrin. (Tr. 515).

Hill continued to treat with NP Bizzari in May of 2021, at which time she reported feeling less depressed and having improved energy and eagerness. (Tr. 547). A mental status examination at this visit revealed an anxious mood but otherwise unremarkable mental status findings.

6

(Tr. 548). In July, Hill reported feeling better overall and that her anxiety was fair. (Tr. 550). Her mental status examination revealed an anxious mood but was otherwise unremarkable. (Tr. 551).

Hill was evaluated by Dr. Jeanne Shapiro, Ph.D., in August of 2021. (Tr. 556-60). Despite her ongoing treatment at REACH and her history of substance abuse, Hill reported that she had no history of drug or alcohol abuse and that she had never been in a substance abuse treatment program. (Tr. 557). She told Dr. Shapiro that she experienced depression, fatigue, panic attacks, and memory issues but denied agoraphobia. (*Id.*). On examination, Hill reported a depressed and anxious mood; she had intact attention, concentration, and memory skills; she had coherent and goal directed thought processes; and her insight and judgment were fair. (Tr. 557-58). Hill further reported an ability to take care of her personal care, household chores, shop, manage money, use public transportation, and socialize with friends. (Tr. 559).

Dr. Shapiro opined that Hill had no limitations in understanding, remembering, or applying simple or complex instructions or making work-related decisions; moderate limitations in interacting with others;

mild to moderate limitations in sustaining concentration and performing tasks at a consistent pace; mild limitations sustaining an ordinary routine; and marked limitations controlling her behavior and regulating her emotions. (Tr. 559). Dr. Shapiro diagnosed Hill with posttraumatic stress disorder, panic disorder, and unspecified depressive disorder. (*Id.*).

NP Bizzari's notes from October indicate that Hill was benefitting from attending classes, and that her mood, motivation, and energy had improved, although she experienced some increased anxiety. (Tr. 781-82). Similarly in November, Hill reported that her medication was working well and helping with her anxiety, and that her mood was improved overall. (Tr. 784). NP Bizarri noted Hill's plans to get her New York State cosmetology license. (*Id.*).

Hill continued to treat with NP Bizzari in March of 2022, at which time it was noted that Hill's anxiety improved, and she was no longer feeling miserable, snappy, or experiencing panic attacks. (Tr. 790). Around this time, treatment notes from REACH indicate that Hill's depression screening was negative, and her anxiety was stable. (Tr. 768). In June, Hill reported to NP Bizarri that her anxiety was manageable,

her mood was overall stable, and that she was happier and felt less overwhelmed. (Tr. 793). NP Bizzari discussed transferring Hill's medication management to her primary care physician because of her stability. (Tr. 794). Ultimately, NP Bizzari discharged Hill from care when Hill moved to Pennsylvania in September of 2022. (Tr. 796).

NP Bizarri filled out a form in June of 2022 regarding Hill's work limitations. (Tr. 563-67). NP Bizzari opined that Hill had no limitations in carrying out one or two step tasks, making simple work-related decisions, interacting with others, concentrating and attending to simple work tasks. (Tr. 563-65). NP Bizzari further opined that Hill would be unable to function between 11 and 25 percent of the time with respect to performing at a consistent pace and completing tasks in a timely manner, as well as her ability to tolerate customary work pressures and production requirements. (Tr. 565). She reported that Hill would be absent two days per month, and that she could only sustain 25 to 30 hours of work per week. (Tr. 566-67).

Hill established care with Scranton Counseling Center in October of 2022 after moving to Pennsylvania. (Tr. 816). Around this same time,

Hill established care with a primary care physician, who noted Hill's depression and anxiety and restarted her medications. (Tr. 800). Hill's intake at Scranton Counseling indicated that her postpartum depression and agoraphobia were better, but that she still suffered from anxiety and depression, trust issues, and excessive worrying. (Tr. 816). Notes from Scranton Counseling in November indicated that Hill had no history of mania, that her mood was anxious, and that her mental status examination was otherwise unremarkable. (Tr. 823-25).

It was against the backdrop of this record that an ALJ held a hearing on Hill's disability application on December 13, 2022. (Tr. 38-63). Hill and a Vocational Expert both appeared and testified at this hearing. (*Id.*). Following this hearing, on December 23, 2022, the ALJ issued a decision denying Hill's application for disability benefits. (Tr. 14-37). The ALJ first concluded that Hill had not engaged in substantial gainful activity since December 1, 2018, her alleged onset of disability. (Tr. 19). At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Hill suffered from the following severe impairments: depressive disorder, postpartum depression, anxiety disorder, and opioid

dependence. (Tr. 20). At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations. (Tr. 20-23). Specifically, the ALJ found that Hill was only moderately limited in the four areas of social functioning. (*Id.*).

Between Steps 3 and 4, the ALJ then concluded that Hill:

[H]a[d] the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out simple instructions. The claimant can use judgment to make simple work-related decisions. The claimant should work in a job with occasional changes in the routine work setting. The claimant cannot perform work requiring a specific production rate such as an assembly line or perform work which requires hourly quotas. The claimant should have occasional contact with coworkers and supervisors, and no public contact.

(Tr. 23).

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and Hill's reported symptoms. Regarding the medical opinion evidence, the ALJ considered the opinions of the state agency consulting providers, Dr. Juriga and Dr. Ochoa. (Tr. 28). These providers opined that Hill was

11

able to understand and remember simple and detailed instructions, could maintain adequate attention and concentration, sustain a routine and relate and respond in an appropriate manner, but had some difficulty with adaptation. (Tr. 73, 111). The ALJ found these opinions partially persuasive. (Tr. 28). The ALJ remarked that the finding that Hill was moderately limited in her ability to keep a routine was inconsistent with evidence showing she took her son out to play, went shopping every day, and missed appointments because of travel. (*Id.*). The ALJ further noted that the finding that Hill could relate and respond in an appropriate manner was inconsistent with Hill's reports of difficulty getting along with others. (*Id.*). The ALJ also noted that these providers did not review the entirety of the medical records. (*Id.*).

The ALJ also considered the August 2021 opinion of Dr. Shapiro and found this opinion to be partially persuasive. (Tr. 27-28). The ALJ noted that Dr. Shapiro did not review the entirety of the medical evidence. (Tr. 27). The ALJ reasoned that Dr. Shapiro's opinion that Hill had marked limitations in regulating her emotions and controlling her behavior was based on the claimant's self-reporting and inconsistent with

the multiple mental status examinations in the record that showed normal findings. (Tr. 28). The ALJ also reasoned that this marked limitation was not supported by later findings that Hill's mental health was well-controlled and stable. (*Id.*). The ALJ also noted that the information Hill provided to Dr. Shapiro was not consistent with the medical records. (*Id.*).

The ALJ further considered the August 2022 opinion of NP Bizzari and found that this opinion was not persuasive. (Tr. 29). The ALJ reasoned that NP Bizzarri's restrictive limitations were not consistent with her own treatment records, which showed largely unremarkable mental status examinations throughout the relevant period. (*Id.*). The ALJ also concluded that NP Bizzari's opinion that Hill would be unable to perform at a consistent pace was not supported by her own treatment records and was also inconsistent with other findings in the record, such as Dr. Shapiro's finding that Hill's attention and concentration were grossly intact. (*Id.*). The ALJ further found that NP Bizzarri's opinion that Hill would be absent two days per month was speculative and

inconsistent with treatment records showing that Hill missed appointments due to travel. (*Id.*).

With respect to Hill's symptoms, the ALJ found that Hill's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical evidence. (Tr. 23-27). Hill testified that she lived with her mom, stepdad, and son. (Tr. 45). She stated that she does not socialize much, and that she does not do well with crowds. (Tr. 47, 52). Hill reported experiencing what she characterized as "manic" behavior, in that she talks too fast, shuts down and isolates, and has a hard time getting along with others. (Tr. 50-51). She further testified that she had problems with her memory and received a lot of help from her mother. (Tr. 53, 55). In her function report, Hill stated that she was depressed and experienced anxiety attacks. (Tr. 317). She reported taking care of her son, cleaning her home, and going to the store and the park. (Tr. 318). Hill further stated that she has high anxiety and isolates herself from others, and that she has trouble concentrating and paying attention. (Tr. 321-22).

The ALJ found Hill's testimony to be inconsistent with the objective clinical findings. (Tr. 23-27). The ALJ noted the treatment records throughout the relevant period that showed a normal mood and affect, intact recent and remote memory, and good judgment. (Tr. 25). The ALJ further pointed to treatment notes from NP Bizzarri that indicated Hill's depression was stable and controlled, her mood was improved, medications were helping with her anxiety, and her mental status examinations were largely unremarkable. (Tr. 26). The ALJ noted that treatment records showed improvement in Hill's mental health conditions throughout the relevant period, in that her mood improved, her motivation increased, and she reported doing well overall. (Tr. 26-27).

Having made these findings, the ALJ found at Step 4 that Hill was unable to perform her past work but found at Step 5 that Hill could perform the occupations of a merchandise marker, housekeeper, and office helper. (Tr. 31). Accordingly, the ALJ found that Hill had not met the stringent standard prescribed for disability benefits and denied her claim. (Tr. 31-32).

This appeal followed. On appeal, Hill argues that the ALJ erred in her consideration of NP Bizzari's medical opinion. This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

III.   <u>Discussion</u>

A. <u>Substantial Evidence Review – the Role of this Court</u>

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record

to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to

support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also*

20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes [him/her] from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and

work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically

arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application in November of 2020 after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to

be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or

24

examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066. Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

D. The ALJ's Decision is Supported by Substantial Evidence.

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is

"only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154. Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Hill presents a single argument on appeal, urging us to remand this matter based on the ALJ's consideration of NP Bizzari's opinion. However, we conclude that the ALJ's consideration of this opinion is supported by substantial evidence. The plaintiff urges us to conclude that NP Bizzari's limitations are supported by the record and compel a finding that she is unable to work. However, the ALJ discussed this opinion and how the extreme limitations were inconsistent with NP Bizzari's own treatment records, which included findings of an improved mood, decreased anxiety, and unremarkable mental status examinations. Further, the ALJ noted that NP Bizzari's opinion that Hill would be absent for two days per month was speculative and not consistent with the treatment records that showed Hill missed appointments because of travel rather than her mental health condition. Additionally, the ALJ reasoned that the limitations regarding Hill's ability to concentrate and

perform work at a consistent pace were inconsistent with the treatment records that consistently showed intact attention and concentration. Accordingly, the ALJ found that this opinion was not persuasive.

Instead, the ALJ found the opinions of Dr. Shapiro and the state agency providers partially persuasive. The ALJ reasoned that these opinions and the limitations set forth therein, which found Hill only mild to moderately limited in some areas of functioning, were more consistent with the objective medical record that contained largely unremarkable examination findings. The ALJ also included limitations that these providers did not account for, such as limiting Hill's interaction with others, based on Hill's subjective reports that she had difficulty getting along with others. Ultimately, the ALJ was confronted with several medical opinions that set forth varying restrictions regarding Hill's ability to perform work. The ALJ adequately explained why he found certain opinions partially persuasive, and why he found NP Bizzari's opinion not persuasive, citing Hill's treatment records to support the limitations set forth in the RFC.

Although there were some abnormal findings during the relevant period, such as notes documenting Hill's subjective complaints regarding her anxiety and depression, we are not permitted at this stage to reweigh the evidence, *Chandler*, 667 F.3d at 359, and instead must simply determine whether the ALJ's decision was supported by "substantial evidence." *Biestek*, 139 S. Ct. at 1154. Given that the ALJ considered all the medical opinion evidence and adequately explained why he found each one persuasive or unpersuasive, we find no error with the ALJ's consideration of the opinion evidence.

Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case, and this decision will be affirmed.

## IV.  <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

28

Submitted this 4th day of December 2024.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge
